NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANGELA W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.G., L.G., *Appellees*.

No. 1 CA-JV 21-0300
FILED 4-7-2022

Appeal from the Superior Court in Maricopa County
No. JD509314
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Michael J. Brown joined.

---

**T H U M M A**, Judge:

¶1          Angela W. (Mother) appeals from an order terminating her parental rights to her two young children. Mother argues the Department of Child Safety (DCS) did not prove that it had made a diligent effort to reunify her with the children. Because Mother has shown no error, the order is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2          Mother has a lengthy history of substance abuse and mental illness and has been involved in two prior dependencies. During the first dependency, filed in 2011 and resulting in termination of her parental rights of another child in 2013, Mother was diagnosed with a schizoaffective disorder, a psychotic disorder and borderline personality disorder. The older child in this case was subject to a dependency filed at his birth in October 2015 based on Mother's substance abuse and mental health issues. After Mother consistently participated in services, including providing clean drug tests, Mother and child were reunified and the dependency was dismissed successfully in August 2016.

¶3          The younger child in this case was born in August 2016. Soon after her birth, DCS received a report that Mother "admitted to relapsing" and using methamphetamine in late 2016 and perhaps early 2017. DCS, however, concluded that neglect was unsubstantiated. In June 2020, however, DCS removed the two children from Mother's care following reports of her substance abuse and neglect. In August 2020, the court found both children dependent as to Mother, when she failed to appear without good cause, and adopted a family reunification case plan.

¶4          DCS offered Mother various services, including supervised visitation, psychological consultation, housing assistance referrals, substance abuse treatment through Terros, random urinalysis testing, transportation upon request and referrals for an emergency psychiatric

assessment per the psychological consultations she received. Mother, however, rarely participated in services.

¶5 Mother only participated in a few of the supervised visits provided. When she did participate, she exhibited concerning behavior. For example, during one supervised visit, Mother was "verbally aggressive," upsetting the children. Mother was ultimately closed out of both supervised visitation and Terros substance abuse counseling due to lack of participation. Although DCS provided drug testing from June 2020 to August 2021, Mother only provided five samples, two of which were positive, including for methamphetamine and oxycodone. For weeks at a time, she failed to call for drug testing and at other times, was scheduled to test but failed to do so.

¶6 At numerous hearings, the court found that DCS had made reasonable efforts to finalize the permanency plan for the children. The court did so without objection at a November 2020 report and review hearing, where given Mother's lack of participation, the court adopted a concurrent case plan of severance and adoption. The court made the same findings at both March 2021 and June 2021 hearings, although doing so over Mother's objections.

¶7 In May 2021, Mother underwent an emergency psychiatric evaluation after she was arrested. During the evaluation, Mother admitted using methamphetamine, fentanyl and oxycodone. Mother did not, however, disclose any mental health diagnoses.

¶8 At a June 2021 permanency planning hearing, which Mother failed to attend, the court changed the case plan to severance and adoption. DCS' motion to terminate filed later that month alleged substance abuse and nine-months' time-in-care, also asserting that termination was in the best interests of the children. *See* Ariz. Rev. Stat. (A.R.S.) §§ 8-533(B)(3) & (8) (2022).[1] Mother contested the severance, including contending that DCS failed to make a diligent effort to provide appropriate reunification services. At a September 2021 hybrid contested severance hearing, where some participants were present in-person as Mother had requested and some participated remotely, Mother failed to appear with no good cause shown for her absence.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶9        The assigned DCS specialist testified to the services offered to Mother, including the extra steps she took to help Mother get the emergency psychiatric assessment. She identified agencies that provided assessments, offered transportation, worked with Mother to obtain transportation and worked with Mother to identify a safe place for her vehicle to be left while she was in the treatment facility. The specialist also testified that while Mother participated in the mandatory psychiatric assessment following her arrest, it was not the assessment she was asked to complete.

¶10       The specialist testified that Mother was provided several psychological consultations throughout the case to "ensure that the Department provided Mother with appropriate services to address her mental health so that she could have a successful reunification, provided she participated and made those behavioral changes." However, the specialist explained that Mother had not shown any behavioral changes or sobriety, continued to have housing instability and had not participated in consistent and ongoing mental health treatment. According to the specialist, Mother "has not demonstrated even a willingness to parent given that she's not engaged in parent aide or supervised visits."

¶11       During cross-examination by Mother's counsel, the specialist was asked about the modifications she had made given Mother's suspected mental illness.[2] The specialist reiterated that she tried to schedule transportation, but Mother did not show up, and tried to coordinate with a facility allowing Mother to walk in, rather than make an appointment, but Mother did not participate. The specialist also testified that Mother failed to participate in an evaluation to identify what services were recommended, which was a prerequisite to setting up those services.

¶12       After receiving evidence and hearing argument, the court granted the motion on both statutory grounds, finding that with respect to the "reasonableness of efforts," DCS "largely lacks authority and factual basis for compelling" a parent to participate in evaluations and services. The court added that DCS had "provided adequate opportunity for the mother to attend . . . the equivalent of an acute psychiatric evaluation to allow her to be medically stabilized. . . . And that initial psychiatric stabilization was likely a preliminary requirement for her being able to benefit from any services. The Department cannot, as a practical matter,

---

[2] Mother did not receive an updated mental health diagnosis until the May 2021 assessment, though DCS suspected mental illness throughout the proceedings.

force her to do that." The court also found that termination of Mother's parental rights was in the best interests of the children, a finding supported by the trial evidence and not challenged on appeal.

¶13        This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and Ariz. R.P. Juv. Ct. 103-104.

## DISCUSSION

¶14        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

¶15        Mother's challenge on appeal is limited to whether DCS provided appropriate reunification services. "The purpose of providing reunification services is to afford a parent 'the time and opportunity to participate in programs designed to improve the parent's ability to care for the child.' Such efforts also enable [DCS] to evaluate a parent's progress, or lack thereof, toward making reunification possible." *Jordan C.*, 223 Ariz. at 96 ¶ 31 (citation omitted). But DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Rather, DCS is only obligated to provide services that have "a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999).

¶16        Here, Mother argues that DCS should have provided modifications to accommodate her behavioral health issues. Mother relies on *Mary Ellen C.*, asserting that "[w]hen a parent suffers from mental illness, DCS must do more than provide a parent with resource information and direct her to set up the service herself." She further cites *Donald W. v. Dep't of Child Safety*, 247 Ariz. 7 (App. 2019), claiming that "[i]f a particular family-reunification service is of insufficient effectiveness, then DCS is duty-bound to offer an alternative." According to Mother, "[i]f DCS had genuinely

wanted Mother to participate in the evaluation sooner, then DCS should have provided Mother with more than the names of a few providers and a directive to set up the evaluation for herself. More assistance was required."

**¶17**        Notwithstanding DCS' efforts, Mother's behavioral health needs were not assessed until after she was arrested in May 2021 and participated in a mandated assessment. During that assessment, Mother denied previous mental illness diagnoses. Given DCS' repeated efforts to have Mother participate in such an assessment, and Mother's denial of a mental illness diagnosis during the May 2021 assessment, Mother's argument fails. Although DCS knew of Mother's 2011 diagnosis and noted signs of mental illness, an updated psychiatric assessment was indicated to determine what services were necessary. DCS took significant efforts for that updated assessment to occur, but Mother did not participate until she was arrested in May 2021.

**¶18**        Quite apart from Mother's failure to participate in a mental health assessment, DCS provided modifications in services to Mother, including transportation setup, insurance help and securing a safe space to leave her vehicle during the assessment.[3] After Mother failed to show for transportation, DCS arranged for Mother to walk in for an assessment without a scheduled appointment. Mother, however, did not take advantage of any of these modifications in services designed to help her. And DCS lacked the authority to physically make her comply with services and was not required to "ensure that a parent participates in each service it offers." *JS-501904*, 180 Ariz. at 353.

**¶19**        Mother's lack of participation in nearly all offered services distinguishes this case from *Mary Ellen C*. In *Mary Ellen C.*, the predecessor to DCS did not provide a parent who had severe mental illness any reunification services for almost a year after her child was taken into care. 193 Ariz. at 192 ¶ 35. Here, by contrast, Mother was offered services, but did not significantly participate in them.

---

[3] Mother also argues that DCS failed to meaningfully help her secure housing. The specialist testified, however, that she provided a housing assistance referral to Mother.

**¶20** Mother's reference to *Donald W.*, that DCS must provide alternatives if a service is insufficient, is also distinguishable. The court in *Donald W.* referred to alternate methods of communication for a parent who was actively engaged in attempting to communicate with his child. 247 Ariz. at 25-26 ¶¶ 65-67. Here, Mother was not actively engaged in services or communicating with her children. Additionally, as the superior court found, DCS does not have the ability to force a parent to attend and participate in services.

**¶21** The court concluded that Mother was unable to parent given her history of chronic substance abuse and there were reasonable grounds to believe that condition would continue for a prolonged indeterminate period. That finding was supported by the trial evidence. The court similarly found that DCS had made a diligent effort to provide appropriate reunification services, a finding also supported by the trial evidence. Mother demonstrated, during her 2015-2016 dependency, that she was able to parent even with her behavioral health issues if she was not also using illegal substances, where she participated in services and continued "to address her mental health issues." In this proceeding, however, she continued to use illegal substances and was not able to parent while doing so. Because Mother has shown no error in the court's findings that DCS did provide diligent efforts to reunify the family, the severance of her parental rights is affirmed.

## CONCLUSION

**¶22** The order terminating Mother's parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA